### UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF LOUISIANA

**EXPRESS LIEN, INC.**                    **CIVIL ACTION: 19-10156**
**Plaintiff**                             **JUDGE:**
                                          **MAG:**
**VERSUS**

**HANDLE, INC.,**
**JEFFREY NADOLNY,**
**and**
**ABC INSURANCE CO.**
**Defendants**

### COMPLAINT

    **NOW INTO COURT,** through undersigned counsel, comes plaintiff, Express Lien, Inc. who

submits to this Honorable Court this Complaint, alleging as follows:

### NATURE OF THE ACTION

1.

This is a civil action arising under the laws of the United States, specifically under 17 USC § 501 and the

digital Millenium Copyright Act 17 U.S.C. § 512, et seq. ("DMCA") for copyright infringement, under 15

USC § 1125(a) (§ 43(a) of the Lanham Act) for trade dress infringement and unfair competition, and under

Louisiana law, specifically the Louisiana Unfair Trade Practices and Consumer Protection Law ("LUPTA")

La. R.S. 51:1401, et seq., Louisiana Civil Code Article 1953, Louisiana Civil Code Article 1995, and

Louisiana Civil Code Article 2007; Plaintiff seeks damages and injunctive relief.

**PARTIES**

2.

Express Lien, Inc. (hereinafter "Levelset" or "Plaintiff") is a Delaware corporation, with its principal place of business at 1121 Josephine St., New Orleans, LA 70130, and does certain business under the names Levelset and *zlien*. Plaintiff has operated in New Orleans, Louisiana for nearly 10 years, growing into a business employing over 100 employees in New Orleans, led technology growth in New Orleans, and has won multiple workplace awards.

3.

Handle, Inc. ("Handle") is, upon information and belief, a for-profit corporation organized under the laws of the State of Delaware, with its principal place of business 981 Mission St., San Francisco, CA, 94103, and has been a business entity for approximately six months.

4.

Jeff Nadolny ("Nadolny") is, upon information and belief, the Vice President of Operations at Handle, and an individual domiciled in either California or Arizona.

5.

Upon information and belief, ABC Insurance Company, the identity of which is unknown at this time, had a policy of liability insurance in place at all relevant times, covering Handle for the allegations contained in this Complaint. Plaintiff will seek leave of Court to amend this Complaint to state Defendant ABC Insurance Company's full proper name when it is ascertained.

**JURISDICTION AND VENUE**

6.

This Court has subject matter jurisdiction pursuant to 28 USC § 1331 (actions arising under the laws of the United States), 15 USC § 1121 (actions arising under the Lanham Act), 28 USC §

1338(a) (acts of Congress relating to copyrights and trademarks), 28 USC § 1338(b) (civil actions asserting a claim of unfair competition).

7.

This Court has personal jurisdiction over Defendants. Defendants have conducted acts of infringement and unfair competition both within and outside this District causing injury in this District. Defendants solicit business through a website which may be accessed within the State of Louisiana and this District in particular. Further, Defendants entered into, and subsequently breached, a contractual agreement with Plaintiff who is located and does business within this District and through which Defendants consented to the jurisdiction of this Court.

8.

Venue is proper in this District pursuant to 28 USC § 1391. Upon information and belief, Defendants are subject to personal jurisdiction in this District, the acts complained of herein take place within this District through the Defendant's website, and further, Defendants entered into, and subsequently breached, a contractual agreement with Plaintiff who is located and does business within this District and through which Defendants consented to the jurisdiction of this Court.

## **FACTS**

9.

Levelset is a construction payment and document management software platform for parties in construction. Through the Levelset platform, construction participants can monitor, exchange, file or record, and request hard-copy and electronic information and documents related to construction payment and construction projects generally, as well as exerting and maintaining control over their security rights. As part of its offering, and through its software, Levelset sells "self-help"

construction notices and lien forms, provides assistance in having those forms delivered or filed, and provides informational resources, tools, and insights to parties in the construction industry. The business is transacted through a website.

10.

A website is a specific location on the World Wide Web identified by a unique address known as a Universal Resource Locator ("URL"). Plaintiff distributes content and transacts business through the websites found at the URLs "levelset.com" and "zlien.com" (the "plaintiff's websites").

11.

To further the plaintiff's business goals, and to provide the plaintiff's customers and prospective customers with information, the plaintiff provides informational resources through the plaintiff's websites.

12.

The informational resources available through the plaintiff's websites are created by Plaintiff, and contain information about a large number of topics related to construction payment, and include, but are not limited to, document templates, the answers to Frequently Asked Questions ("FAQs"), a blog through which informational articles are published, compilations of selected text from state statutes concerning construction and construction payment law, and other information (together, the "Resources & Content Marketing Product").

13.

Plaintiff spends substantial amounts of time, money, and effort creating and compiling Plaintiff's content, including, but not limited to, its document templates, answers to FAQs, blog articles, informational pages of its websites, compilations of selected text from state statutes concerning

construction and construction payment law, and the design, navigation, information architecture, layout, and "look and feel" of the plaintiff's websites.

14.

The Resources and Content Marketing Product and other information, are provided as an informational product by the plaintiff for the purposes of establishing the plaintiff as an authority and leader in plaintiff's area of business, to drive traffic to the plaintiff's website, and to drive sales through the plaintiff's website.

15.

Every page of the plaintiff's websites is marked with a copyright notice.

16.

Content on the plaintiff's websites constantly evolves, but much of the content on plaintiff's websites, including the downloadable document templates, has been registered for copyright protection.

17.

Plaintiff's websites have been designed with special attention to the "look and feel" of the website to establish the trust of plaintiffs' users, to identify to plaintiff's users that they are on plaintiff's site, and therefore, to drive sales through the plaintiff's website.

18.

Defendant had no business presence whatsoever prior to November, 2018.

19.

In order to accelerate growth, increase exposure in the market, secure funding, obtain advice, gain connections, and increase the likelihood of future funding, Defendant applied to Y Combinator, a large and significant "seed" funder and start-up accelerator located in the San Francisco Bay Area.

20.

To apply to Y Combinator, Defendant was required to fill out an application detailing the Defendant's business idea, product to date, and other information, and to present to Y Combinator partners in person.

21.

In exchange for equity in Defendant Handle, Defendant was given "seed" funding from Y Combinator and accepted to the Y Combinator Winter 2019 batch, which ran from January to March, and which culminated in the Y Combinator W19 Demo Day on March 18-19.

22.

Defendant was building its website and product from November through the current date, with the help of Y Combinator, and during this time Defendant was active on Plaintiff's website, had fraudulently obtained access to Plaintiff's product, and was downloading an enormous amount of Plaintiff's resources and document templates.

23.

From at least November 25, 2018 through the current date, as Defendants have been building their website and product and pitching the same to potential investors, Defendants have visited the Plaintiff's websites at least 73 distinct times, visited at least 188 distinct and separate pages of Plaintiff's websites, and completed at least 193 "events" or form submissions in order to download or otherwise obtain information from Plaintiff's websites. Defendants' actions on Plaintiff's websites resulted in Plaintiff's marketing software determining that the likelihood of Defendant becoming a customer of Plaintiff's, based solely on web actions, was greater than 43%. In addition to visiting the Plaintiff's public facing websites, Defendants also actually logged into Plaintiff's system through fraudulent accounts at least 17 times during the same period. **In other words,**

**during the first 149 days of Defendants' website and business, Defendants' took an average of 1.4 distinct actions on Plaintiff's websites *per day.***

24.

In April, 2019 Plaintiff discovered Plaintiff's copyrighted material being displayed or otherwise distributed by Defendant by and through Defendant's website, found at the URL handle.com.

25.

In April, 2019 Plaintiff discovered Defendant improperly infringing on plaintiff's distinctive trade dress by and through Defendant's website.

26.

In April, 2019 Plaintiff discovered Defendant has made, and is currently making, untrue claims for the purposes of increasing Defendant's visibility and stature, and for the purposes of gaining an improper and unfair advantage in competition with Plaintiff and others for customers in the market.

27.

Defendant Handle purports to provide a web platform to assist construction participants with construction payment and associated documents and processes, including document preparation and mailing/filing services with respect to securing or maintaining security rights, in support of which Defendant provides construction payment and construction payment document related information via handle.com.

28.

Defendant's operation as described in paragraph 26, above, involves providing information on construction payment management and construction payment documents, and providing forms and assistance in sending or filing those documents. These services are substantially similar to the

services provided by Plaintiff. Defendant also provides information through a "Resources" section of its website similar to the information provided by Plaintiff through the "Resources" section of Plaintiff's website.

29.

Upon information and belief, Defendants had visited Plaintiff's websites and/or been informed of the information thereon and was made aware of Plaintiff's business, through Thomas Hogan at Ashby Lumber no later than October 17, 2018, a company to which Plaintiff had attempted to sell its product; and that through such access Defendant obtained the idea to impermissibly copy the same.

## **BREACH OF CONTRACT**

30.

Plaintiff hereby incorporates the allegations set forth in paragraphs 1 through 29 above as though fully set forth herein.

31.

Use of Plaintiff's "websites, products, forms, data, information, resources, or other services" are governed by the website's Terms of Use ("Terms").

32.

Defendants, through the creation of accounts with Plaintiff, expressly and affirmatively accepted and agreed to the plaintiff's Terms of Use and to be bound thereby. See "Terms of Use Acceptance Logs & Affidavit" attached hereto as **Exhibit A**.

33.

Defendants visited Plaintiff's website, copied Plaintiff's Resources and Content Marketing Product, design, formatting, website look and feel, source code, techniques, processes, algorithms, know-how, technology, products, or other information, and has used the same in violation of law and the Terms of Use governing the use of the website, and Defendants continue to do the same.

34.

Defendants visited Plaintiff's website for the purposes of reverse engineering plaintiff's websites, services, and technology, and/or has engaged in such reverse engineering in violation of law and the Terms of Use governing the use of the website.

35.

The Terms of Use specifically set forth, in the section entitled "Intellectual Property Information" that the information contained on Plaintiff's website is protected by copyright, provide limitations on the use of the information contained on Plaintiff's website, and by agreeing to the Terms of Use, Defendant and other users specifically agree to set stipulated and liquidated damages for forbidden copying and use of Plaintiff's content.

36.

The Terms of Use specifically set forth, in the section entitled "Use of the Company's Services" that certain document templates are made available through the plaintiff's websites, provides limitations on the use of such document templates, and by agreeing to the Terms of Use, Defendant and other users specifically agree to set stipulated and liquidated damages for forbidden copying and use of such forms and documents.

37.

The Terms of Use specifically set forth, in the section entitled "Use of the Company's Services" a prohibition on "Reverse Engineering," and by agreeing to the Terms of Use, Defendant and other users specifically agree to both set stipulated and liquidated damages for prohibited "Reverse Engineering," as well as injunctive relief.

38.

The Terms of Use specifically set forth, in the section entitled "Conduct on Site" a prohibition on "impersonat[ing] any person or entity" and by agreeing to the Terms of Use, Defendant and other users specifically agree to refrain from doing so.

39.

Defendants visited Plaintiff's websites and created accounts with Plaintiff.

40.

In addition to visiting the website and providing information in response to marketing requests thereon to access document templates and other information, Nadolny created an account with Plaintiff purportedly as the company JBN Supplier with an address in Surprise, Arizona. Upon information and belief, JBN Supplier is a fictitious company claimed to exist solely to allow fraudulent access to Plaintiff's websites by Nadolny. Upon information and belief, the fraudulent account was created at the specific direction of and for the benefit of Handle, and directly arising from Nadolny's work for Handle.

41.

Nadolny, acting fraudulently for employer Handle as JBN Supplier, affirmatively and specifically accepted the plaintiff's Terms of Use on 12/4/18 at 5:41pm from IP address 198.27.253.194. This

IP address is associated with San Francisco, CA. See "Terms of Use Acceptance Logs & Affidavit" attached hereto as **Exhibit A**.

42.

Nadolny additionally created an account with Plaintiff purportedly as the company Abbot Construction with an address in Asheville, NC, using the first name "fffff" the last name j.b.nadolny@gmail.com and using the email address "remodelergroup@gmail.com". Upon information and belief, Nadolny has no association or affiliation with the company John W. Abbott Construction Co., Inc. which has the same address as the "Abbot Construction" created by Nadolny. Upon information and belief, Nadolny was fraudulently impersonating the company John W. Abbott Construction Co., Inc. as "Abbot Construction." Upon information and belief, the fraudulent account was created solely to allow fraudulent access to Plaintiff's websites and products, and was created at the specific direction of and for the benefit of Handle, and directly arising from Nadolny's work for Handle.

43.

Nadolny, acting fraudulently for employer Handle as Abbot Construction, affirmatively and specifically accepted the plaintiff's Terms of Use on 1/28/19 at 8:36pm. See "Terms of Use Acceptance Logs & Affidavit" attached hereto as **Exhibit A**.

44.

Defendants, through creation of an account with Plaintiff, expressly and affirmatively accepted and agreed to the plaintiff's Terms of Use and to be bound thereby. See "Terms of Use Acceptance Logs & Affidavit" attached hereto as **Exhibit A**.

45.

Defendants visited Plaintiff's website and plagiarised Plaintiff's content in violation of law and the Terms of Use governing the use of the website. See, "Resources & Content Marketing Product Plagiarism and Reverse Engineering" attached hereto as **Exhibit B**, and "List of Downloads" attached hereto as **Exhibit C.**

46.

Defendants visited Plaintiff's website, copied Plaintiff's document templates, and upon information and belief, has used document templates in violation of law and the Terms of Use governing the use of the website. See, "List of Downloads" attached hereto as **Exhibit C.**

47.

The content on Plaintiffs' websites, including but not limited to, blog articles, document templates, answers to FAQs, informational pages, compilations of selected text from state statutes concerning construction and construction payment law, and other information, is created by Plaintiff as an informational product for the purposes of establishing the plaintiff as an authority and leader in plaintiff's area of business by demonstrating domain expertise, and to drive sales through the plaintiff's website. Plaintiff's content-product is a cornerstone of Plaintiff's go-to-market strategy, and Plaintiff's content is fundamental to its marketing strategy.

48.

Defendants visited Plaintiff's website for the purposes of reverse engineering plaintiff's websites, services, technology, processes, know-how, and product, and has engaged in such reverse engineering in violation of law and the Terms of Use governing the use of the website. See, "Resources & Content Marketing Product Plagiarism and Reverse Engineering" attached hereto

as **Exhibit B,** and "Website and Services – Reverse Engineering & Trade Dress Infringement"
attached hereto as **Exhibit D**.

49.

Specifically, Defendants have engaged in a systematic practice of improperly attempting to reap
the benefits of Plaintiff's work of creating Plaintiff's specific content-product by identifying
specific content topics and titles published by Plaintiff, and reverse engineering such content in an
attempt to gain the benefit of Plaintiff's authority and domain expertise. See, "Content-Product
Plagiarism/Reverse Engineering Examples" attached hereto as **Exhibit B**

50.

Plaintiff is entitled to recover damages pursuant to Louisiana Civil Code Article 1995.
Additionally, or alternatively Plaintiff is entitled to recover stipulated damages pursuant to
Louisiana Civil Code Article 2007. Plaintiff is entitled to recover damages pursuant to the Terms
as an agreement between the parties.

51.

Plaintiff is entitled to attorneys' fees pursuant to the Terms.


**FRAUD AND UNFAIR TRADE PRACTICES**

52.

Plaintiff hereby incorporates the allegations set forth in paragraphs 1 through 51 above as though
fully set forth herein.

53.

Pursuant to Louisiana Civil Code Article 1953 "Fraud is a misrepresentation or a suppression of
the truth made with the intention . . . to obtain an unjust advantage".

54.

Pursuant to Louisiana Unfair Trade Practices and Consumer Protection Law ("LUTPA") La.

R.S. 51:1401, et seq., "unfair methods of competition and unfair or deceptive acts or practices in

the conduct of any trade or commerce" is illegal, La. R.S. 51:1405(A).  In interpreting this

statute, "courts have found that a trade practice is redressable under the Act if it "offends

established public policy and when the practice is immoral, unethical, oppressive, unscrupulous,

or substantially injurious to consumers." *WA OFFSHORE EQUIPMENT, CO. v. Parmatic Filter*

*Corp.*, 767 F. Supp. 125, 126 (E.D. La., 1991) quoting *Coffey v. Peoples Mortgage & Loan of*

*Shreveport,*408 So.2d 1153, 1156 (La.Ct.App. 1981).

55.

Defendant Jeffrey Nadolny ("Nadolny") visited Plaintiff's websites beginning no later than

Sunday, November 25, 2018. Upon information and belief, Nadolny visited the site at the specific

direction of and for the benefit of Handle, and directly arising from Nadolny's work for Handle.

56.

Nadolny again visited Plaintiff's websites on November 28, 2018, and, at that time, provided

information to Plaintiff in order to view portions of Plaintiff's websites. Information provided to

Plaintiff included that the visitor's email address was "jeff@handle.com."

57.

On December 4, 2018 Nadolny, who upon information and belief was acting at the direction of

and pursuant to his employment with Defendant Handle, modified the information provided to

Plaintiff through the Plaintiff's websites. One of these changes was to modify the associated email

address from jeff@handle.com to j.b.nadolny@gmail.com in an attempt to disguise the

Defendants' unfair or deceptive acts or practices. Additional changes or additions were also made to the provided information including:

- that the Defendant's company was a Law Firm;

- that the Defendant most often performed work related to construction projects in California;

- that the Defendant was interested in tackling the business challenge of "saving time" through the use of Plaintiff's websites and products;

- that it was Defendant's first time using a California mechanics lien;

- that Defendant was personally best described as an Accounts Receivable or Accounts Payable Manager; and,

- that the Defendant's company was currently working on three construction projects.

58.

On February 4, 2019 Nadolny, who upon information and belief was acting at the direction of and pursuant to his employment with Defendant Handle, further modified the information provided to Plaintiff through the Plaintiff's websites. One of these changes was to provide the Company Name "JBN Supplies" in an attempt to disguise the Defendants' unfair or deceptive acts or practices. Additional changes were also made to the provided information.

59.

Nadolny created an account with Plaintiff purportedly as the company Abbot Construction with the address of 348 Hazel Mill Rd., Asheville, NC, using the first name "fffff" the last name j.b.nadolny@gmail.com and using the email address "remodelergroup@gmail.com."

60.

Upon information and belief, Nadolny has no association or affiliation with the company John W. Abbott Construction Co., Inc. which has the same address as the "Abbot Construction" created by

14

Nadolny. Upon information and belief, Nadolny was fraudulently impersonating the company John W. Abbott Construction Co., Inc. as "Abbot Construction" in an attempt to disguise the Defendants' unfair or deceptive acts or practices. Upon information and belief, the fraudulent account was created solely to allow fraudulent access to Plaintiff's websites and products, and was created at the specific direction of and for the benefit of Handle, and directly arising from Nadolny's work for Handle.

61.

Through the fraudulent account Abbot Construction, Defendants used Plaintiff's product to generate and deliver  a Conditional Waiver and Release Upon Progress Payment document for a purported project located at 419 Pierce St. in San Francisco, California. Abbot Construction entered certain information into Plaintiff's product to proceed with the transaction. Such information included, but was not limited to, that "Abbot Construction" was to be paid by the property owner "18 and Blake Partnership" and that a material supplier on the project was "JBN Supplier" another of Defendants' fraudulent accounts.

62.

The Defendants' transaction and creation of a Conditional Waiver and Release Upon Progress Payment for the purported project located at 419 Pierce St. in San Francisco, California was completed on 1/28/2019.

63.

Upon information and belief, Abbot Construction did not perform work at 419 Pierce St., Apt. 3 in San Francisco, CA, was not hired by or paid by 18 and Blake Partnership for such work, and JBN Supplier did not furnish materials to such project.

15

64.

Upon information and belief, the Defendants' transaction for a Conditional Waiver and Release Upon Progress Payment for the purported project located at 419 Pierce St. in San Francisco, California was placed solely to fraudulently gain information about Plaintiff's product, services, processes, know-how, and user interfaces.

65.

Through the fraudulent account JBN Supplier, Defendants created three additional transactions with Plaintiff. Two transactions for Conditional Waivers and Releases Upon Progress Payment, and one California Mechanics Lien, all for a purported project located at 419 Pierce St. in San Francisco, California. Abbot Construction entered certain information into Plaintiff's system to proceed with the transactions. Such information included, but was not limited to, that JBN Supplier was hired by "Abbot Construction" (another of Defendants' fraudulent accounts) and that the property owner was "18 and Blake Partnership".

66.

The Defendants' transactions were made on 1/10/2019 (California mechanics lien); and 1/28/2019 (both Conditional Waivers).

67.

Upon information and belief, JBN Supplier did not provide "lumber for roofing" or otherwise perform work or furnish materials at 419 Pierce St., Apt. 3 in San Francisco, CA, was not hired by or paid by Abbot Construction or 18 and Blake Partnership for such work.

68.

Upon information and belief, the Defendants' transaction of a Conditional Waiver and Release Upon Progress Payment for the purported project located at 419 Pierce St. in San Francisco,

California was placed solely to fraudulently gain information about Plaintiff's product, services, processes, know-how, and user interfaces.

69.

Creating multiple false accounts, with deceptive and misleading information in order to gain access to a competitor's product, service, processes, know-how, and design is an "unfair method of competition and unfair or deceptive act or practice in the conduct of trade or commerce" and is "is immoral, unethical, oppressive, unscrupulous" in violation of law.

70.

Defendants, through creating multiple false accounts, with deceptive and misleading information in order to gain access to a competitor's product, service, processes, know-how, and design, made "a misrepresentation or a suppression of the truth . . . with the intention . . . to obtain an unjust advantage."

71.

Upon information and belief, Defendants used the information gained, and content, processes, and information copied by the fraudulent actions described above, to successfully pitch their company to Y Combinator and other prospective investors to receive or request funding, connections, advice, and assistance, and to better position themselves to raise additional capital to fund their business, and to otherwise improperly compete with Plaintiff in the market.

72.

Through its website and when conducting business, the Defendants have made plain misrepresentations about their organization, services, and product, and/or have suppressed the truth about the same.

73.

Further, through its website and when conducting business, the Defendants have used these

misrepresentations and/or suppressions of the truth to unfairly compete with the Plaintiff.

74.

Further, the Defendants have otherwise engaged in unethical, unfair, deceptive, and

unscrupulous actions, all to unfairly compete with the Plaintiff.

75.

Upon information and belief, the alleged unfair, untrue, deceptive, immoral, unethical,

fraudulent, and/or unscrupulous actions that were performed by the Defendant, offend

established public policy and constitute fraud and a violation of the Louisiana Unfair Trade

Practices Act, include; and such actions include, are not limited to, the following:


A. Plagiarizing Plaintiff's content, and misrepresenting, or suppressing the truth of the content's

original authorship or the origin of that content, to the Defendants' customer base and to

potential customers, all to make the Defendants appear more qualified (than the Plaintiff or a

competitor) to serve the customer or potential customer, or to receive funding to further innovate

its products and services;


B.  Upon information and belief, violating copyrights of or plagiarizing from other parties, *other

than the Plaintiff*, to achieve the same illicit purpose; See, e.g. "Third-Party Violations" attached

hereto as **Exhibit E**.

C.  Misrepresenting on its website, and elsewhere, that the Defendants' services enable a user to "Manage *all* project documents and lien deadlines automatically" where, upon information and belief, the Defendants' software does not have the ability to manage *all* project documents and lien deadlines, especially outside of the state of California, and the representation that it does is a misrepresentation of the truth;

D. Misrepresenting on its website, and elsewhere, that "Handle keeps track of all timelines for you to ensure your rights are always protected" where, upon information and belief, Handle does not keep track of all timelines (especially outside of the state of California) and cannot ensure that a user's rights are "always protected" solely by managing "timelines" and the representation that it does is a misrepresentation of the truth;

E.  Misrepresenting on its website, and elsewhere, that "Handle created a massive database network" of "3 Million + Contractors" and "40,817 Suppliers" where upon information and belief, the Defendants have not created such a network, and/or otherwise that such is not true;

F. Misrepresenting on its website, and elsewhere, that a user will "Save an average of 47 hours per month with Handle" where upon information and belief, the Defendants do not have any study, survey, or information to support that statistic, and/or otherwise that such is not true;

G. Misrepresenting, on its website, and elsewhere, that Handle has integrations with the following companies and products: CMiC, ComputerEase, FOUNDATION, Oracle Textura, Procore, Quickbooks, RedTeam, Sage 100, Sage 300, SAP, Spectrum, Viewpoint, Wave, and

Xero; where upon information and belief, the Defendants do not have any such integrations
and/or otherwise that such is not true.

76.

In all of the above illustrative examples, the Defendant misrepresents and suppresses the truth.

77.

Further, in all of the above illustrative examples, the Defendant leverages those
misrepresentations and illicit actions to drive sales, and specifically to drive sales at the expense
of competitors, and to solicit investor funding and support, and specifically to solicit investor
funding support at the expensive of competitors, which include the Plaintiff.

78.

Defendants use the above misrepresentations, as well as the information in the resources section
of its website and within its product, and the proprietary data unethically obtained, to position
Defendants to enhance the perceived or actual value of the Defendants' services, or to establish
Defendants as authorities or otherwise knowledgeable parties with respect to the information
contained therein.

79.

Defendant uses these misrepresentations, suppressions, and other unfair tactics to gain an unjust
advantage.

80.

Plaintiff is entitled to recover damages and attorneys' fees pursuant to Louisiana Unfair Trade
Practices and Consumer Protection Law ("LUPTA") La. R.S. 51:1401, et seq.

## COPYRIGHT INFRINGEMENT

81.

Plaintiff hereby incorporates the allegations set forth in paragraphs 1 through 80 above as though fully set forth herein.

82.

At all relevant times Plaintiff has been the owner and copyright holder of all information contained on the pages of Plaintiff's websites, located at the URLs "zlien.com" and "levelset.com".

83.

Plaintiff is the registered copyright holder of the following U.S. copyrights:

1. Copyright Number: TX0007413764 - Database of Mechanics Lien and Notice Laws and Requirements, Components of System Framework, and Nationwide Lien and Notice Templates.

2. Copyright Number: TXu001761460 – Lien Law Resources and Summaries

3. Copyright Number: TX0008147997 – State by State Resources / Guides to Mechanics Liens – Private Projects.

4. Copyright Number: TX0008148181 - State by State Resources / Guides to Mechanics Liens and Bond Claims – Public Projects.

5. Copyright Number: TX0007733609 – www.zlien.com

6. Copyright Number: TX0007754460 – Zlien State Lien Statutes Database

7. Copyright Number: TXu002057093 – Zlien Community Blog

8. Copyright Number: TXu002057094 – Zlien Website

84.

Without authorization, Defendants copied portions of work protected by some or all of the registered copyrights set forth in paragraph 80, published the copied content on Defendants' website, and claimed the copied content as Defendants' own original work. See, **Exhibit B** **"**Content-Product Plagiarism/Reverse Engineering Examples"; and **Exhibit F** "Word-for-Word" violation, as a limited example of the impermissible copyings.

85.

For all of the works at issue in this matter, Plaintiff is the owner and creator of the copyright-protected works.

86.

Defendants have distributed, and are distributing, the Plaintiff's protected content for profit, by and through Defendants' website located at the URL "handle.com", in violation of federal law, resulting in harm to Plaintiff including, but not limited to, damages to Plaintiff's profits, sales, and business.

87.

Plaintiff did not authorize the Defendants' copying, displaying, distribution, or selling of the Plaintiff's work.

88.

Defendants knew the infringed content belonged to Plaintiff, and that Defendants did not have permission to copy the content.

89.

Defendants intentionally and willfully misled and continue to intentionally and willfully mislead people, including customers and financers, as to the ownership of the copied content.

90.

Defendants claim a copyright in the material published on the Defendants' site, with disregard to whether or not the information presented was actually created by Defendants.

91.

Plaintiff is entitled to recover damages, including, but not limited to: Plaintiff's losses as a result of the wrongful conduct, and any and all profits Defendants have made as a result of its wrongful conduct, under 17 USC § 504. Alternatively, Plaintiff is entitled to statutory damages under 17 USC § 504(c).

92.

Additionally, as the Defendant's conduct was willful, the award of statutory damages should be enhanced in accordance with and pursuant to 17 USC § 504(c)(2).

93.

Plaintiff is also entitled to recover attorneys' fees and costs of suit pursuant to 17 USC § 505.

94.

Additionally or alternatively, Plaintiff is entitled to recover damages, attorneys' fees, and costs, pursuant to and as set forth by the stipulated and liquidated damages clause in the Intellectual Property Information section of the Terms of Use, which were specifically and affirmatively agreed to by Defendants and which specifically prohibit the copying, reproduction, modification, republishing, uploading, posting, transmitting, or distribution of any documents or information from Plaintiff's sites in any form or by any means without prior written permission of Plaintiff.

## TRADE DRESS INFRINGEMENT

95.

Plaintiff hereby incorporates the allegations set forth in paragraphs 1 through 94 above as though fully set forth herein.

96.

Plaintiff's website's designs and language choices are widely recognized by consumers and has become a valuable indicator of the source and origin of the information provided, which in turn, drives Plaintiff's sales, and positions Plaintiff as a leader in this field.

97.

Defendants copied Plaintiff's stylistic choices, including the design, layout, wording, color-scheme, and font choices, of Plaintiff's site. See, **Exhibit D** "Website and Services – Reverse Engineering & Trade Dress Infringement."

98.

Examples of the "look and feel" components of the Plaintiff's website, which was copied by the Defendants, includes, but is not limited to:

A. The site's use of the "Lato" font in gray;

B. The site's frequent use of "Lato" font in light gray for paragraph text, directly beneath a darker, bolded header in "Lato" font, often featuring a short blue dash offset to the left between the header and the paragraph text;

24

C. The site's use of text and images of in-application processes, alternating left and right, down the page as the user scrolls;

D. The site's top toolbar selections changing from dark grey to blue when a visitor hovers over the selection with their mouse;

E. "Resources" appearing on the top toolbar to the far-right of other toolbar selections, with a downward arrow to the right of the word "Resources", which, when hovered over, unveils multiple selections which change from gray to blue when hovered over;

F.  Use of the specific phrase "Stress-free;"

G.  Use of a "Network" or Customer Map with supporting customer/network numbers;

H. The in-app layout and user interface and navigation, including, but not limited to, layout, color scheme, color combinations, iconography, document descriptions. Specifically: use of the same shade of green accent to indicate action items on a user's in-application dashboard; use of the company logo on the top left of a user's in-application view on a blue banner that is darker than the remainder of the page, with an even darker toolbar directly beneath the company logo, among other likenesses; and a selection of document offerings running vertically down the user's dashboard, with selections turning from white to blue upon user selection;

I.  Enabling users to create an order for notice or lien documents through an online Wizard, which mimics the Plaintiff's look and feel;

99.

Defendants have had fraudulent access to Plaintiff's website, web-application, processes, template downloads, know-how, and design for the entire time Defendants have been building Defendants' competing website and products, including the entirety of the time spent at the Y Combinator accelerator.

100.

Defendants' use in commerce of Plaintiff's website content, and/or website content confusingly similar to Plaintiff's, and/or use of confusingly similar "look and feel" is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Defendant with Plaintiff, or as to the origin, sponsorship, or approval of the Defendant's services, information, or commercial activities with Plaintiff in violation of 15 USC §1125(a).

101.

As a direct and proximate result of Defendant's violation of Plaintiff's trade dress, Plaintiff has suffered and continues to suffer damages to its profits, sales, and business.

102.

Plaintiff is entitled to recover damages pursuant to 15 USC §1121, et seq.


**PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiff demands judgment and relief against Defendants and respectfully requests this Honorable Court:

1      Find that the Defendants entered into a contract with the Plaintiff through specific and affirmative acceptance of the Plaintiff's Terms of Use;

2        Find that the Defendants breached the contract with Plaintiff through Defendants' impermissible copying and publication of Plaintiff's content; Defendants' impermissible reverse-engineering of the Plaintiffs' content-product, services product, website, processes, and know-how; and Defendants' fraudulent misrepresentation and impersonation of others to gain access to Plaintiff's product;

3      Find that the Defendant has violated the Terms of Use of Plaintiff's website, and as such, has agreed to the liquidated damages set forth therein;

4      Find that the Defendant has engaged in unfair or deceptive business practices in violation of the Louisiana Unfair Trade Practices and Consumer Protection Law ("LUTPA") La. R.S. 51:1401, et seq.;

5      Find that the Defendant has engaged in copyright infringement in violation of 17 USC § 501 and the DMCA;

6      Find that the Defendant has engaged in trade dress infringement and unfair competition in violation of 15 USC § 1125(a);

7      Find that the Defendants have willfully infringed Plaintiff's copyrights and trade dress, with full knowledge of Plaintiff's use of and rights;

8      Find that the Defendants perpetrated a Fraud by misrepresenting or suppressing the truth regarding the authorship of information published on Defendants' website;

9      Find that the Defendants perpetrated a Fraud by misrepresenting or suppressing the truth regarding Defendants' identity in making use of the Plaintiff's product and gaining access thereto, and authorship of the information published in the resources section of the Defendant's website;

27

10    Find that the Defendant violated any other provision of Federal or Louisiana law implicated by their acts and this pleading, in the event the violation is not well-pled;

11    Enter judgment for Plaintiff on all Counts of the Complaint;

12    Find that the Defendant has otherwise injured the business reputation and business of Plaintiff by Defendant's acts and conduct set forth in this Complaint.

13    That the Court issue injunctive relief against Defendants, and that Defendants, their agents, representative, servants, employees, attorneys, successors and assigns, and all others in active concert or participation with them, be enjoined and restrained from copying, posting, or making any other infringing use or distribution of any of Plaintiff's protected materials.

14    That the Court order Defendants to pay the stipulated and liquidated damages as set forth in Plaintiff's websites' Terms of Use.

15    That the Court order Defendants to pay Plaintiff's damages and Defendant's profits pursuant to 17 USC § 504(b), or, in the alternative, enhanced statutory damages pursuant to 17 USC § 504(c)(2), for Defendant's willful infringement of Plaintiff's copyrights; and

16    That the Court order Defendants to pay Plaintiff both the costs of this action and the reasonable attorneys' fees incurred in prosecuting this action pursuant to 17 USC § 504;

17    That the Court order Defendants to pay the costs of this action and the reasonable attorneys' fees incurred in prosecuting this action pursuant to the Terms of Use;

18    That the Court grant to Plaintiff any additional damages stemming from the breach of the contract between Defendant and Plaintiff;

19    That the Court grant to Plaintiff damages pursuant to the Defendant's unfair or deceptive business practices in violation of the Louisiana Unfair Trade Practices and Consumer Protection Law ("LUPTA") La. R.S. 51:1401, et seq.

20      That the Court grant to Plaintiff damages stemming from the fraudulent misrepresentation or suppression of the authorship of the information contained in the resources section of the Defendant's website;

21      That the Court grant to Plaintiff damages stemming from the fraudulent misrepresentation or suppression of the identity of the Defendants' in fraudulently obtaining access to Plaintiff's product;

22      That the Court grant to Plaintiff any other damages known at the time of this filing but not well-pled;

23      That the Court grant to Plaintiff such other and additional relief as is just and proper.

Respectfully Submitted:
**Express Lien, Inc.**

**/s/ Nathan Budde**
**NATHAN L. BUDDE (#32103)**
1121 Josephine St.
New Orleans, LA 70130
Tel. 866.720.5436
Attorneys for Express Lien, Inc.
In-House Counsel

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and forgoing has been filed using this Court's ECF electronic filing procedure, which sends electronic notification to all counsel of record this 7th day of May, 2019.

*/s/ Nathan L. Budde*

29