UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

EXPRESS LIEN, INC.                                    CIVIL ACTION

VERSUS                                               NO. 19-10156

HANDLE, INC., JEFFREY                               SECTION "R" (5)
NADOLNY, AND ABC INSURANCE
CO.

## ORDER AND REASONS

Before the Court is defendants' motion to dismiss plaintiff Express Lien's trade dress claim.[1]  Because plaintiff's amended complaint properly states a trade dress claim, the Court denies the motion.

## I.    BACKGROUND

This case arises from a business dispute between two technology companies that provide services to the construction industry.  The amended complaint contains the following factual allegations.  Plaintiff Express Lien, which does business as Levelset, is a Delaware corporation with its principal place of business in New Orleans, Louisiana.[2]  Put simply, Express Lien has

_____

[1]    R. Doc. 45.
[2]    R. Doc. 41 at 1-2 ¶ 2.

developed software that allows parties involved in construction, such as contractors and subcontractors, to monitor and enforce their security rights with respect to construction projects.[3]  Express Lien also assists in filing liens and notices when necessary.[4]  Express Lien's business is done largely through the company's website, which can be found at the URLs "levelset.com" and "zlien.com."[5]  Express Lien's website contains a variety of content, including but not limited to document templates, answers to frequently asked questions, and blog articles.[6]

Defendant Handle, Inc., is a similar technology company that is headquartered in San Francisco, California.[7]  Handle performs substantially the same services as Express Lien.[8]  Specifically, plaintiff alleges that "Handle purports to provide a web platform to assist construction participants with construction payment and associated documents and processes."[9]  Plaintiff further alleges that Handle's operation "involves providing information on construction payment management and construction payment documents, and providing forms and assistance in

---

[3]     *Id.* at 3 ¶ 9.

[4]     *Id.*

[5]     *Id.* at 3-5 ¶¶ 9-14.

[6]     *Id.* at 4 ¶ 12.

[7]     R. Doc. 41 at 2 ¶ 3.

[8]     *Id.* at 8 ¶¶ 29-30.

[9]     *Id.* at 8 ¶ 29.

sending or filing those documents" which are services that are "substantially similar to the services offered by Plaintiff."[10]

Express Lien alleges that Jeff Nadolny, an employee of Handle, visited Express Lien's website and created accounts under the name of fictitious companies. Express Lien further alleges that Nadolny plagiarized and reverse engineered Express Lien's content and used this content to develop Handle's website.[11] Express Lien also alleges that in developing Handle's website, defendants copied Express Lien's stylistic choices, including the design, layout, wording, color scheme, and font choices of Express Lien's site, in violation of Express Lien's trade dress.[12] Express Lien alleges upon information and belief that Nadolny's actions were taken at the direction of, and for the benefit of, Handle.[13]

Handle moved to dismiss Express Lien's complaint for failure to state claim.[14] The Court granted Handle's motion as to Express Lien's trade dress and fraud claims, but allowed Express Lien leave to amend its complaint.[15] Express Lien filed an amended complaint on March 24, 2020.[16] Handle now

---

[10]   *Id.* at 8 ¶ 30.
[11]   *See id.* at 13 ¶¶ 48-50.
[12]   *See id.* at 26 ¶ 103.
[13]   *Id.* at 15 ¶ 57.
[14]   R. Doc. 20.
[15]   R. Doc. 32.
[16]   R. Doc. 41.

moves to dismiss Express Lien's trade dress claim in its amended complaint.[17]

## II.   LEGAL STANDARD

When considering a motion to dismiss for failure to state a claim under Rule 12(b)(6), the Court must accept all well-pleaded facts as true and view the facts in the light most favorable to the plaintiff. *See Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996).  The Court must resolve doubts as to the sufficiency of the claim in the plaintiff's favor. *Vulcan Materials Co. v. City of Tehuacana*, 238 F.3d 382, 387 (5th Cir. 2001).  But to survive a Rule 12(b)(6) motion, a party must plead "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The claim must be dismissed if there are insufficient factual allegations to raise the right to relief above the speculative level, *Twombly*, 550 U.S. at 555, or if it is apparent from the face of the complaint that there is an insuperable bar to relief, *Jones v. Bock*, 549 U.S. 199, 215 (2007).  The Court is not bound to accept as true legal conclusions couched as factual allegations. *Iqbal*, 556 U.S. at 679.

---

[17]      R. Doc. 45.

On a Rule 12(b)(6) motion, the Court must limit its review to the contents of the pleadings, including attachments. *Brand Coupon Network, L.L.C. v. Catalina Mktg. Corp.*, 748 F.3d 631, 635 (5th Cir. 2014). The Court may also consider documents attached to a motion to dismiss or an opposition to that motion when the documents are referred to in the pleadings and are central to a plaintiff's claims. *Id.*

## III. DISCUSSION

"'Trade dress' refers to the total image and overall appearance of a product and 'may include features such as the size, shape, color, color combinations, textures, graphics, and even sales techniques that characterize a particular product.'" *Pebble Beach Co. v. Tour 18 I Ltd.*, 155 F.3d 526, 536 (5th Cir. 1998) (citing *Sunbeam Prods. Inc. v. West Bend Co.*, 123 F.3d 246, 251 n.3 (5th Cir. 1993)). The purpose of trade dress protection is to "secure the owner of the [trade dress] the goodwill of his business and to protect the ability of consumers to distinguish among competing producers." *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 774 (1992) (citing *Park N' Fly, Inc. v. Dollar Park and Fly, Inc.*, 469 U.S. 189, 198 (1985)). Courts have held that a website's "look and feel" may be entitled to trade dress protection. *See, e.g.*, *Test Masters Educational Servs., Inc. v. State Farm Lloyds*, 791

F.3d 561, 565-66 (5th Cir. 2015); *see also Conference Archives Inc. v. Sound Images, Inc.*, No. 3:2006-76, 2010 WL 1626072, at *15 (W.D. Penn. 2010) (explaining the policy underlying trade dress protections for website designs).

In the Fifth Circuit, there is a two-step analysis to determine whether there has been an infringement of trade dress. "First, the court must determine whether the trade dress is protected under the Act. This first inquiry encompasses three issues: (1) distinctiveness, (2) 'secondary meaning,' and (3) 'functionality.'" *Allied Marketing Grp. v. CDL Marketing, Inc.*, 878 F.2d 806, 813 (5th Cir. 1989) (citations omitted). Specifically, trade dress *either* must be distinctive or have acquired a secondary meaning, and must also be non-functional. *Id.* Once a court determines that the trade dress is protected, it must then determine whether trade dress has been infringed. "Infringement is shown by demonstrating that the substantial similarity in trade dress is likely to confuse consumers." *Id.*

## A.    Secondary Meaning

As the Court has previously recognized, Express Lien has not pleaded that its trade dress is entitled to protection because it is distinct. Rather, plaintiff argues its trade dress has secondary meaning. To establish secondary meaning, the Fifth Circuit applies a multi-factor test. The factors

considered include (1) length and manner of use of the mark or trade dress; (2) volume of sales; (3) amount and manner of advertising; (4) nature of use of the mark or trade dress in newspapers and magazines, (5) consumer-survey evidence; (6) direct consumer testimony, and (7) the defendants' intent in coping the trade dress. *Bd. of Supervisors for La. State Univ. Agric. & Mech. Coll. v. Smack Apparel Co.*, 550 F.3d 465, 476 (5th Cir. 2008).

The Court previously dismissed plaintiff's trade dress claim for failing to allege secondary meaning when plaintiff's primary allegation regarding secondary meaning stated only:

> Plaintiff's website designs and language choices are widely recognized by consumers and has [sic] become a valuable indicator of the source and origin of the information provided, which in turn, drives plaintiff's sales, and positions in the field.[18]

But in its amended complaint, Express Lien adds two paragraphs of allegations that it ties directly to its trade dress claim and that remedy its pleading deficiency. For example, Express Lien alleges that its website averages approximately 180,000 "organic sessions" per month, which are "sessions not initiated through paid or referral traffic."[19] These act as a proxy for plaintiff's volume of sales, as Express Lien alleges that its business, which

---

[18]   R. Doc. 1 at 25 ¶ 96; R. Doc. 32 at 34-37.
[19]   R. Doc. 41 at 26 ¶ 102.

is conducted mainly through its website "primarily benefits from organic keyword clicks over pay-per-click advertising, meaning that Plaintiff's website enjoys higher rankings and prominence in search engine results due to . . . its popularity in the construction industry."[20]  With respect to the amount and manner of advertising, Express Lien now alleges that a third party has valued its online presence to be worth $265,000 in advertising expenditures by plaintiff.[21]   Express Lien also reiterates that it has operated online for a decade[22]—which goes to length of use of the trade dress—and that defendant intentionally copied Express Lien's website design because of "Plaintiff's position as a market leader in the relevant field."[23]  And although plaintiff does not make an allegation as to every factor in the secondary meaning test, the Fifth Circuit has found secondary meaning even when plaintiffs did not provide evidence as to all factors.  *See Viacom Intern. v. IRJ Capital Invest., L.L.C.*, 891 F.3d 178, 191 (5th Cir. 2018) (holding a plaintiff established secondary meaning even without evidence of consumer-survey evidence or direct consumer testimony).  Plaintiff's allegations, taken together, rise above the conclusory nature of plaintiff's original complaint

---

[20]    R. Doc. 41 at 26 ¶ 102.
[21]    *Id.*
[22]    *Id.*
[23]    *Id.* at 28 ¶ 107.

8

and provide a sufficient factual basis to survive a motion to dismiss for failure to allege secondary meaning.

### B.   Functionality

In plaintiff's original complaint, it failed to allege affirmatively that the trade dress it sought to protect was non-functional.[24]   In its amended complaint, Express Lien has remedied that pleading error by affirmatively pleading that the trade dress it seeks to protect is non-functional.[25] Moreover, the trade dress Express Lien seeks to protect is the "look and feel" of its website, including such stylistic decisions as "[t]he site's frequent use of 'Lato' font in light gray for paragraph text, directly beneath a darker, bolder header in 'Lato' font, often featuring a short blue dash offset to the left between the header and the paragraph text" and "the in-app layout and user interface and navigation, including, but not limited to, layout, color scheme, color combinations, iconography [and] document description."[26]   Plaintiff also attaches an exhibit of seventeen pages with pictures demonstrating the "look and feel" of its website.[27]

---

[24]     *See* R. Doc. 32 at 37-38.

[25]     *See* R. Doc. 41 at 27 ¶ 105 ("The foregoing aesthetic, stylistic, and *non-functional* elements of Plaintiffs' [sic] website, taken together, create a distinctive look and feel to Plaintiff's website.") (emphasis added).

[26]     *Id.* at 26 ¶ 104(B), (H).

[27]     *See* R. Doc. 41-4.

9

Notably, some of the features plaintiff seeks to protect do seem to have functional elements.  For example, Express Lien seeks to protect "[t]he site's top toolbar selections changing from dark grey to blue when a visitor hovers over the selection with their mouse" and "[u]se of a 'Network' or Customer Map with supporting customer/network numbers."[28]  But although some elements of these features may have functional components, "a particular arbitrary combination of functional features, the combination of which is not itself functional, properly enjoys protection." *Taco Cabana Intern., Inc. v. Two Pesos, Inc.*, 932 F.2d 1113, 1119 (5th Cir. 1991).  Indeed, in the context of colors, the Fifth Circuit has a "long-settled view rejecting aesthetic functionality." *Smack Apparel Co.*, 550 F.3d at 488.   Plaintiff alleges that these arguably functional features contribute to the overall "look and feel" of plaintiff's website.  The Court therefore finds that plaintiff's complaint adequately pleads non-functionality.

### C.   Consumer Confusion

Another essential element of plaintiff's trade dress claim is consumer confusion.  *See Allied Marketing Grp.*, 878 F.2d at 813.  The Fifth Circuit has held that confusion "exists when customers viewing the mark would probably assume that the product or service it represents *is associated with*

---

[28]     R. Doc. 40-41 at ¶ 104(D), (G).

*the source* of a different product or service identified by a similar mark." *Fuddruckers v. Doc's B.R. Others, Inc.*, 826 F.2d 837, 845 (5th Cir. 1987) (emphasis in original). The Fifth Circuit has also enumerated factors to determine whether there is a likelihood of confusion between two products, including (1) similarity of products; (2) identity of retail outlets and purchasers; (3) identity of advertising media; (4) type (*i.e.,* strength) of trademark or trade dress; (5) defendant's intent; (6) similarity of design; and (7) actual confusion. *See Sno-Wizard Mfg. v. Eisemann Products Co.*, 791 F.2d 423, 428 (5th Cir. 1986).

The Court previously found that plaintiff failed to allege consumer confusion properly when plaintiff's complaint stated only:

> Defendants' use in commerce of Plaintiff's website content and/or website content confusing similar to Plaintiff's, and/or use of confusing similar 'look and feel' is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Defendant with Plaintiff, or as to the origin, sponsorship, or approval of the Defendant's service, information or commercial activities with Plaintiff in violation of 15 USC § 1125(a).[29]

But again, plaintiff's amended complaint contains additional allegations that assert sufficient factual matter related to consumer confusion. For example, plaintiff now alleges that consumer confusion

---

[29]    R. Doc. 32 at 38-39; *see also* R. Doc. 1 at 27 ¶ 100.

exists because "both websites rely on the same advertising channels (namely, search engine optimization metrics and keyword advertising),"[30] which goes to the identity of advertising media.   Moreover, with respect to the identity of retail outlets and purchasers, the amended complaint specifically alleges that "both websites are marketed to consumers in the identical industry"[31] that is, the construction industry.  Indeed, the amended complaint alleges that Express Lien's business is aimed at "construction participants" and that Handle's business is similarly aimed at "construction participants."[32]

    With respect to the similarity of the parties' products, plaintiff alleges that its website serves those in the construction agency by allowing them to "monitor, exchange, file or record, and request hard copy and electronic information and documents related to construction payment and construction projects generally."[33] It describes Handle's business nearly identically, as "providing information on construction payment management and construction payment documents, and providing forms and assistance in sending or filing those documents."[34]  And to demonstrate the similarity

---

[30]    R. Doc. 41 at 28 ¶ 107.

[31]    *Id.*

[32]    *Compare* R. Doc. 41 at 3 ¶ 9 *with id.* at 8 ¶ 29.

[33]    R. Doc. 41 at 3 ¶ 9.

[34]    *Id.* at 8 ¶ 30.

of design, plaintiff attaches seventeen pages of comparisons between Express Lien's and Handle's websites.[35]

Finally, plaintiff's complaint specifically alleges that "due to Defendants' fraudulent access to Plaintiff's website, misappropriation of Plaintiff's intellectual properly, and Plaintiff's position as a market leader in the relevant field, the copying of Plaintiff's website is believed to have been intentional."[36]  Indeed, plaintiff now makes non-conclusory allegations as to every factor laid out by the Fifth Circuit other than actual confusion.  "It is well established, however, that evidence of actual confusion is not necessary for a finding of likelihood of confusion."  *Smack Apparel Co.*, 550 F.3d at 483.  Plaintiff's allegations, taken together, therefore provide a sufficient factual basis to allege consumer confusion.

### D.   Synthesizing Features

Defendants also move to dismiss plaintiff's trade dress claim for failing to synthesize its various features into a common aesthetic or "look and feel." The Fifth Circuit has held that "[w]hen alleging a trade dress claim, the plaintiff must identify the discrete elements of the trade dress that it wishes to protect."  *Test Masters Educ. Servs., Inc. v. State Farm Lloyds*, 791 F.3d

---

[35]    *See* R. Doc. 41-4.
[36]    R. Doc. 41 at 28 ¶ 107.

561, 565 (5th Cir. 2015).  A plaintiff must also allege that these discrete elements combine into a common "look and feel" of a website.  *See, e.g., Parker Waichman LLP v. Gilman Law LLP*, No. 12-cv-4787, 2013 WL 3863928, at \*4 (E.D.N.Y. July 24, 2013); *Salt Optics, Inc. v. Jand*, No. 10-0828, at 5 (C.D. Cal. Nov. 19, 2010).  The Fifth Circuit also has held that there must be an allegation of aesthetic similarity to state a "look and feel" trade dress claim for a website.  *See Laney Chiropractic & Sports Therapy, P.A. v. Nationwide Mut. Ins. Co.*, 866 F.3d 254, 262 (5th Cir. 2017).

Plaintiff's amended complaint alleges nine specific elements plaintiff seeks to protect,[37] including such features as "[t]he site's frequent use of 'Lato' font in light gray for paragraph text, directly beneath a darker, bolder header in 'Lato' font, often featuring a short blue dash offset to the left between the header and the paragraph text" and "the in-app layout and user interface and navigation, including, but not limited to, layout, color scheme, color combinations, iconography [and] document description."[38]  Moreover, plaintiff further alleges that "[t]he foregoing aesthetic, stylistic, and non-functional elements of Plaintiffs' website, taken together, create a distinctive look and feel to Plaintiff's website."[39]  Plaintiff also attaches to its complaint

---

[37]    R. Doc. 41 at 26 ¶ 104.

[38]    *Id.* at 26 ¶ 104(B), (H).

[39]    R. Doc. 41 at 27 ¶ 105.

an exhibit of seventeen pages of its website, comparing the aesthetic features to those of Handle's website.[40]   Plaintiff's allegations create a plausible inference that the protectable elements are synthesized into a common aesthetic or "look and feel."   The Court therefore finds that plaintiff's complaint adequately pleads a trade dress claim.

### E.   Claim against Nadolny

Finally, defendants move to dismiss plaintiff's trade dress claim against Nadolny.   "[C]orporate officers who actively assist with their corporation's infringement may be personally liable for inducing infringement regardless of whether the circumstances are such that a court should disregard the corporate entity and pierce the corporate veil."   *Pres-Vac AS v. Bergan*, No. 90-4551, 1992 WL 41642, at *1 (E.D. La. Feb. 26, 1992); *see also Mead Johnson & Co. v. Baby's Formula Serv., Inc.*, 402 F.2d 19, 23 (5th Cir. 1968) (holding that individuals actively involved in infringement are also liable).

Defendants argue that plaintiff fails to allege that Nadolny actively or knowingly caused an infringement of Express Lien's trade dress.   But the amended complaint details, at length, plaintiff's allegations regarding Nadolny's visits to plaintiff's website and the fraudulent accounts Nadolny

---

[40]   *See* R. Doc. 41-4.

created to access plaintiff's website without detection.[41]   Plaintiff also specifically brings its trade dress claim against Nadolny as well as Handle, alleging that "*defendants* copied Plaintiff's stylistic choices, including the design, layout, wording, color-scheme, and font choices, of Plaintiff's site."[42] These allegations, taken together, are sufficient to "nudge[ plaintiff's] claim[ that Nadolny facilitated the infringement of Express Lien's trade dress] across the line from conceivable to plausible."   *Twombly*, 550 U.S. at 547. The Court therefore will not dismiss plaintiff's trade dress claim against Nadolny.

## IV.   CONCLUSION

For the foregoing reasons, the Court DENIES defendants' motion.

New Orleans, Louisiana, this ___9th___ day of July, 2020.

_____
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE

---

[41]   *See* R. Doc. 41 at 11-14 ¶¶ 31-51; 15-19 ¶¶ 57-71.
[42]   *Id.* at 26 ¶ 103.

16