## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**EXPRESS LIEN, INC.**                                   **CIVIL ACTION**

**VERSUS**                                                     **NO: 19-10156**

**HANDLE, INC. ET AL.**                             **SECTION: "H"**

## ORDER AND REASONS

Before the Court is Plaintiff Express Lien, Inc.'s Motion for Partial Summary Judgment (Doc. 185). For the following reasons, the Motion is **GRANTED IN PART** and **DENIED IN PART.**

## BACKGROUND

Plaintiff Express Lien d/b/a Levelset ("Express Lien") is a New Orleans-based construction payment and document management software platform for parties in construction. Plaintiff distributes content and transacts business through an online platform (the "Levelset Platform") found at the URLs "zlien.com" and "levelset.com." Through the Levelset Platform, "construction participants can monitor, exchange, file or record, and request hard-copy and electronic information and documents related to construction payment and construction projects generally, as well as exert[] and maintain[] control over their security rights."[1] Visitors to the website can also purchase "self-help" informational resources on construction-related topics. Plaintiff contends that much of its downloadable content is registered for copyright protection and

---

[1] Doc. 1 at 3.

that the website's users are required to create an online account and agree to the website's Terms of Use (the "Terms") before accessing its content.

Defendant Handle, Inc. ("Handle") is a similar and competing construction technology company headquartered in California. Plaintiff alleges that Handle's employee, Defendant Jeffrey Nadolny ("Nadolny"), created multiple fictitious accounts with the Levelset Platform to improperly gain access to Express Lien's content. Plaintiff alleges that Nadolny then copied and reverse-engineered its Levelset Platform for Handle's benefit and in derogation of the Terms of Use. On May 7, 2019, Plaintiff filed this suit against Handle and Nadolny (collectively "Defendants") for breach of contract, fraud, violation of the Louisiana Unfair Trade Practices and Consumer Protection Law ("LUTPA"),[2] copyright infringement, and trade dress infringement. On May 3, 2021, Plaintiff voluntarily dismissed its claim for trade dress infringement. Trial on Plaintiff's remaining claims is set for June 21, 2021.

Now before the Court is Plaintiff's Motion for Partial Summary Judgment wherein Plaintiff asks the Court to find that Nadolny acted as an agent for Handle and that Defendants are liable for breach of contract and LUTPA violations. Defendants oppose the Motion.

## LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[3] "As to materiality . . . [o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."[4] Nevertheless, a dispute

---

[2] LA. REV. STAT. § 51:1401, *et seq*.
[3] FED. R. CIV. P. 56.
[4] Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

about a material fact is "genuine" such that summary judgment is inappropriate "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[5]

In determining whether the movant is entitled to summary judgment, the Court views facts in the light most favorable to the non-movant and draws all reasonable inferences in his favor.[6] "If the moving party meets the initial burden of showing that there is no genuine issue of material fact, the burden shifts to the non-moving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial."[7] Summary judgment is appropriate if the non-movant "fails to make a showing sufficient to establish the existence of an element essential to that party's case."[8]

"In response to a properly supported motion for summary judgment, the nonmovant must identify specific evidence in the record and articulate the manner in which that evidence supports that party's claim, and such evidence must be sufficient to sustain a finding in favor of the nonmovant on all issues as to which the nonmovant would bear the burden of proof at trial."[9] The Court does "not . . . in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts."[10] Additionally, "[t]he mere argued existence of a factual dispute will not defeat an otherwise properly supported motion."[11]

---

[5] *Id*. at 248.
[6] Coleman v. Hous. Indep. Sch. Dist., 113 F.3d 528, 533 (5th Cir. 1997).
[7] Engstrom v. First Nat'l Bank, 47 F.3d 1459, 1462 (5th Cir. 1995).
[8] Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).
[9] Johnson v. Deep E. Tex. Reg. Narcotics Trafficking Task Force, 379 F.3d 293, 301 (5th Cir. 2004) (internal citations omitted).
[10] Badon v. R J R Nabisco, Inc., 224 F.3d 382, 393–94 (5th Cir. 2000) (quoting Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994)).
[11] Boudreaux v. Banctec, Inc., 366 F. Supp. 2d 425, 430 (E.D. La. 2005).

## LAW AND ANALYSIS

In Plaintiff's Motion for Partial Summary Judgment, Plaintiff asks this Court to find that: (1) Defendant Jeffrey Nadolny acted as an agent for Handle in his dealings with Express Lien; that (2) Defendants are liable for breach of contract; and that (3) Defendants are liable for violations of unfair trade practices under LUTPA. The Court will discuss each claim in turn.

## I.     Whether Nadolny Acted as an Agent for Handle

Under Louisiana law, "[a] mandate is a contract by which a person, the principal, confers authority on another person, the mandatary or agent, to transact one or more affairs for the principal."[12] "A mandatary's power or authority is composed of his actual authority, express or implied, together with the apparent authority which the principal has vested in him by his conduct."[13] An actual agency contract may be created expressly or implicitly.[14] "Express actual authority is created by the oral or written agreement between the principal and the agent."[15] "It is created by implication when, from the nature of the principal's business and the position of the agent within the business, the agent is deemed to have permission from the principal to undertake certain acts which are reasonably related and necessary concomitant of the agent's express authorization."[16]

Here, Plaintiff asserts that Nadolny had actual implied authority to enter into its Terms of Use and access Express Lien's content. As support, Express Lien primarily relies upon Judge Vance's earlier ruling in this

---

[12] McLin v. Hi Ho, Inc., 118 So. 3d 462, 467 (La. App. 1 Cir. 2013) (citing LA. CIV. CODE art. 2989).

[13] *Id.* (quoting Boulos v. Morrison, 503 So.2d 1, 3 (La. 1987)).

[14] *See id.* (citing AAA Tire & Export, Inc. v. Big Chief Truck Lines, Inc., 385 So.2d 426, 429 (La. App. 1 Cir. 1980)).

[15] Hous. Expl. Co. v. Halliburton Energy Servs. Inc., 359 F.3d 777, 780 (5th Cir. 2004) (citing *AAA tire & Expert, Inc.*, 385 So. 2d at 429).

[16] *Id.* (citing *AAA Tire & Export, Inc.*, 385 So.2d at 429).

matter.[17] In addressing Defendants' earlier Motion to Dismiss, Judge Vance found that Handle was bound by the forum selection clause in Express Lien's Terms of Use because Nadolny was acting as an agent for Handle when he accepted the Terms. In so finding, Judge Vance looked to Handle's offer of employment letter to Nadolny, which stated that Nadolny was to act as "Operations Engineer" and that his duties would include: "[p]lanning and implementing course of action to recover outstanding invoices for customers" and "[d]esign and implementation of the automated debt collection process."[18] As the offer letter granted Nadolny express authority to research mechanic's lien laws online, Judge Vance concluded that Nadolny had implied authority to visit Express Lien's website with such information as doing so was a "reasonable and necessary concomitant" of his express authority.[19] Now, Express Lien asks this Court to find that the undisputed evidence supports Judge Vance's earlier finding that Nadolny had implied authority to bind Handle in its dealings with Express Lien.[20]

In opposition, Handle asserts that Nadolny could not have bound Handle to Express Lien's Terms of Use because: (1) Handle modified the terms of

---

[17] This matter was initially before Judge Vance of the Eastern District of Louisiana and was transferred to this section on January 14, 2021. *See* Doc. 145.

[18] Doc. 32 at 7–8; Doc. 19-3 at 2.

[19] *See* Doc. 32 at 9–10 ("Implied authority is found when an action is a 'reasonable and necessary concomitant[] of the agent's express authorization.'" (quoting Hous. Expl. Co. v. Halliburton Energy Servs., Inc., 359 F.3d 777, 780 (5th Cir. 2004)).

[20] Express Lien also argues that Judge Vance's ruling constitutes "the law of the case" which this Court is bound to follow under the law-of-the-case doctrine. The law-of-the-case doctrine "generally precludes reexamination of issues of law or fact decided on appeal, either by the district court on remand or by the appellate court itself on a subsequent appeal." USPPS, Ltd. v. Avery Dennison Corp., 647 F.3d 274, 282 (5th Cir. 2011) (quoting Todd Shipyards Corp. v. Auto Transp., S.A., 763 F.2d 745, 750 (5th Cir. 1987)). The doctrine, however, does not preclude courts "from reconsidering previous ruling on interlocutory orders such as summary judgment motions" as they are not "decision[s] on appeal." Louisiana v. Guidry, 489 F.3d 692, 697 (5th Cir. 2007). The Court thus rejects Express Lien's argument that this Court is precluded from re-examining Judge Vance's earlier ruling in this case, particularly when that ruling was at the early motion to dismiss stage.

Nadolny's employment and thereby removed any implied authority Nadolny may have had to visit the Levelset Platform, and (2) there is a genuine issue of material fact as to whether Nadolny accepted Express Lien's Terms of Use. The Court will address each argument in turn.

### A.  Whether Handle Modified Nadolny's Authority

Assuming that Nadolny is himself bound by the Terms of Use, Defendants assert that Nadolny nevertheless could not have also bound Handle because Handle CEO Patrick Hogan modified Nadolny's employment duties shortly after providing Nadolny with the offer letter. Louisiana "law is clear that written contracts may be modified by oral contracts and the conduct of the parties."[21] Although "[t]estimonial or other evidence may not be admitted to negate or vary the contents of an authentic act or act under private signature[,]" such "evidence may be admitted . . . to prove that the written act was modified by a subsequent and valid oral agreement."[22] "Whether there is an oral agreement that modified the written contract is a question of fact[,]" and the party asserting modification must prove it by a preponderance of the evidence.[23] Here, Defendants point to Hogan's deposition testimony and affidavit for evidence that, shortly after providing Nadolny with the offer letter, Hogan modified Nadolny's job duties to no longer include designing and implementing automated debt collection processes.

Even if the Court were to find sufficient evidence of modification, the alleged modification would still grant Nadolny implied authority to accept Express Lien's Terms of Use. In Hogan's affidavit, he states:

> Although Mr. Nadolny was involved with the creation and

---

[21] Driver Pipeline Co. v. Cadeville Gas Storage, LLC, 150 So. 3d 492, 500 (La. App. 2 Cir. 2014), writ denied, 159 So. 3d 1058 (La. 2015) (citing Grosjean v. Grosjean, 50 So. 3d 233 (La. App. 2 Cir. 2010); Smith v. Coffman, 87 So. 3d 137 (La. App. 2 Cir. 2012).

[22] La. Civ. Code art. 1848.

[23] See Driver Pipeline Co., 150 So. 3d at 501 (citations omitted).

> preparation of some of the state mechanics' lien law forms that are available to Handle's customers, I instructed him to use, and am confident that he used, forms that are provided by state statutes and other state government sources, forms provided by respected treatises and practice guides, and forms that in some instances, he created on his own, by using state statutes, state government sources, treatises, and practice guides as a template or guide.

Assuming that Hogan's affidavit accurately and sufficiently evidences Nadolny's modified duties, the revised employment agreement granted Nadolny express authority to utilize certain trusted sources to create Handle's mechanics' lien forms. There is, however, no evidence that Hogan precluded Nadolny from looking to the internet for these sources or from comparing Handle's forms to those already in existence. Indeed, the Court cannot conceive that Nadolny was instructed to create these forms in a vacuum—without consulting existing sites with compiled resources. Thus, the express grant of authority to "create and prepare" mechanics' lien forms gave Nadolny implied authority to visit sites, such as Express Lien's, and review the law and information cited therein. Moreover, this Court agrees with Judge Vance that this implied authority necessarily included the authority to accept the affiliated Terms of Use.[24] As there is sufficient evidence that Nadolny's interactions with the Levelset Platform were in relation to his employment with Handle, the Court concludes that Handle is bound by Nadolny's acceptance of the Terms of Use to the extent Nadolny's acceptance is found sufficient.

### B.   Whether Nadolny Sufficiently Accepted Express Lien's Terms of Use

Defendants next argue that there is insufficient evidence to demonstrate that "Nadolny knew about or had notice of each website's terms of use or

---

[24] Doc. 32 at 10.

manifested assent to those terms."[25] "The chief consideration when determining the validity of contractual terms—in contracts with or without a nexus to the internet—is whether the party to be bound had reasonable notice of the terms at issue and whether the party manifested assent to those terms."[26] In the case of "clickwrap" agreements such as the one at issue, courts within the Fifth Circuit have consistently held that, where parties knew or should have known about the existence of a website's terms, the parties may be bound even if they have not read them.[27] This conclusion is consistent with Louisiana law holding that "signatures are not mere ornaments" and that "[a] person who signs a written instrument is presumed to know its contents and cannot avoid its obligations by contending that he did not read it, or that it was not explained or that he did not understand it."[28]

As evidence of Nadolny's acceptance of Express Lien's Terms of Use, Plaintiff has supplied this Court with its "Terms of Use Acceptance Logs" that represent that Nadolny accepted the Terms of Use twice: once on December 4, 2018 under the user "JBN Supplier" and email address j.b.nadolny@gmail.com; and once on January 28, 2019 under the user "Abbot Construction" and email remodelergroup@gmail.com.[29] To authenticate the logs, Plaintiff provides the Affidavit of Hisham Younis, Express Lien's Chief Technology Officer, wherein Younis swears that the logs are gathered pursuant to the normal course of

---

[25] Doc. 321.

[26] One Beacon Ins. Co. v. Crowley Marine Servs., Inc., 648 F.3d 258, 269 (5th Cir. 2011).

[27] Deshotel v. PayPal, Inc., No. CV 6:19-0373, 2020 WL 5813322, at *7–8 (W.D. La. Aug. 24, 2020), report and recommendation adopted sub nom. Deshotel v. CardCash Exch. Inc., No. 19-CV-373, 2020 WL 5807609 (W.D. La. Sept. 29, 2020) (and cases cited therein). See also One Beacon Ins. Co., 648 F.3d 258 at 268–89 (and cases cited therein).

[28] Williams v. Interstate Dodge Inc., 34 So. 3d 1151, 1156 (La. App. 2 Cir. 2010) (citing Tweedel v. Brasseaux, 433 So.2d 133 (La. 1983); Southern Treats, Inc. v. Titan Properties, L.L.C., 927 So.2d 677 (La. App. 2 Cir. 2006); First South Farm Credit, ACA v. Gailliard Farms, Inc., 880 So.2d 223 (La. App. 2 Cir. 2004)).

[29] Doc. 1-2 at 2.

business and that the logs confirm "[t]hat a party *affirmatively accepted* Express Lien, Inc.'s Terms of Use" and "[c]ertain information about the party and the Terms acceptance."[30]

To rebut Plaintiff's evidence, Defendants advance two primary arguments. First, Defendants argue that:

> [T]he mere act of visiting a website with immediately accessible articles and information about mechanics liens during the course of Mr. Nadolny's research about mechanics' liens does not itself establish that Mr. Nadolny knew about or had notice of each of the website's terms of use or manifested assent to those terms.[31]

Defendants, however, provide no evidence to suggest that visitors to the non-public portions of the Levelset Platform "automatically" accept the site's Terms of Use or that Nadolny was otherwise unaware of the Terms.[32] Moreover, the Court finds Defendants' argument to this point contradicted by Plaintiff's evidence that Nadolny accepted the Terms of Use only twice—once under each account—but visited the website "at least 147 times, viewed 177 unique and distinct pages . . . [and] downloaded 71 unique forms."[33]

Second, Defendants argue that Hashim Younis's Affidavit is itself invalid because Younis did not personally collect the information in the Terms of Use Acceptance Logs and testified that the produced Excel Sheet was not automatically generated. Federal Rule of Civil Procedure 56(c)(4) provides that "[a]n affidavit or declaration used to support or oppose a motion must be made

---

[30] *Id.* at 3 (emphasis added).

[31] Doc. 231 at 5.

[32] Defendants argue that areas of the Levelset Platform are accessible without acceptance of the site's Terms of Use. Plaintiff, however, does not dispute that the publicly accessible portions of its website do not require acceptance of its Terms. As the publicly accessible portions of the Levelset Platform are not at issue, the Court finds Defendants' argument to this point moot.

[33] Doc. 185-11 at 26. Defendants argue that Plaintiff's expert inaccurately reported the number of site visits and views, pointing this Court to evidence that Nadolny visited the website 72 times and viewed 188 pages. *See* Doc. 231-1 at 7. This disparity, however, does not affect the Court's ultimate conclusion.

on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." The Federal Rules, therefore, do not require that the affiant have personally collected or personally typed the information. As Younis has personal knowledge that the logs accurately reflect Nadolny's acceptance of the Terms of Use and that such records are kept in the ordinary course of business, Younis is a person through whom the logs could be admitted as evidence under the business records hearsay exception.[34] The Court thus finds that Younis's Affidavit sufficiently authenticates the Terms of Use Acceptance Logs.

In sum, Defendants have failed to demonstrate a genuine issue of material fact as to whether Nadolny sufficiently accepted the Terms of Use. Defendants have provided only speculative argument, not evidence, in support of their positions. Indeed, the Court finds significant the fact that Nadolny does not deny accepting or viewing the Terms of Use in his Affidavit. Accordingly, Plaintiff's Motion for Partial Summary Judgment is granted as it pertains to Nadolny's acceptance of the Terms of Use and his authority to do so on behalf of Handle.

### C.   Whether Defendants are Liable for Breach of Contract and LUTPA

Plaintiff also asks this Court to find that Defendants are liable for breach of contract and LUTPA violations. As evidence of Defendants' liability, Plaintiff attaches the reports of its experts, Eric Bear and Robert Leonard, who collectively opine that much of the content on Handle's website was reverse-engineered and copied from the Levelset Platform. In response, Defendants provide the Affidavit of Handle's Chief Executive Officer, Patrick Hogan, wherein Hogan swears that "Handle did not, in fact, refer to, review, gain

---

[34] *See* FED. R. EVID. 803(6) (setting forth hearsay exception for "Records of a Regularly Conducted Activity").

inspiration from, or otherwise copy or paraphrase, any content on Plaintiff's platform (blog articles, Frequently Asked Questions (FAQs), forms or other content) when conceiving of, researching, or authoring the content that appears on Plaintiff's website."[35]

Although conclusory, self-serving affidavits are often insufficient to create a genuine issue of material fact, "an affidavit based on personal knowledge and containing factual assertions suffices to create a fact issue, even if the affidavit is arguably self-serving."[36] Moreover, a court "'may not make credibility determinations or weigh the evidence' in a ruling on a motion for summary judgment."[37] "Instead, a court 'must disregard all evidence favorable to the moving party that the [finder of fact] is not *required* to believe.'"[38]

Hogan is the CEO of Handle and should therefore have personal knowledge as to the source of the information on his company's website. Thus, to answer the ultimate question as to whether Defendants are liable for breach of contract and LUTPA violations, this Court would have to weigh Hogan's credibility against that of Plaintiff's experts. As such credibility determinations are inappropriate at summary judgment, the Court defers its ruling on liability to trial. Plaintiff's Motion for Partial Summary Judgment as to its breach of contract and LUTPA claims is therefore denied.

---

[35] Doc. 321-7 at 2.

[36] C.R. Pittman Const. Co. v. Nat'l Fire Ins. Co. of Hartford, 453 F. App'x 439, 443 (5th Cir. 2011) (citations omitted). *See* S. U.S. Trade Ass'n v. Unidentified Parties, No. CIV.A. 10-1669, 2012 WL 579439, at *2 (E.D. La. Feb. 22, 2012) (and cases cited therein).

[37] Holmes v. N. Texas Health Care Laundry Coop. Ass'n, 304 F. Supp. 3d 525, 539 (N.D. Tex. 2018) (quoting Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 254–55 (1986)).

[38] Heinsohn v. Carabin & Shaw, P.C., 832 F.3d 224, 245 (5th Cir. 2016) (quoting Chambers v. Sears Roebuck & Co., 428 Fed. App'x. 400, 407–08 (5th Cir. 2011)).

## <u>CONCLUSION</u>

For the foregoing reasons, Plaintiff Express Lien, Inc.'s Motion for Partial Summary Judgment (Doc. 185) is **DENIED IN PART** and **GRANTED IN PART** as explained herein.

New Orleans, Louisiana this 17th day of June, 2021.

**JANE TRICHE MILAZZO**
**UNITED STATES DISTRICT JUDGE**