UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **EXPRESS LIEN, INC.** | **CIVIL ACTION** |
| **VERSUS** | **NO: 19-10156** |
| **HANDLE, INC. ET AL.** | **SECTION: "H"** |

## ORDER AND REASONS

Before the Court is Defendants Handle, Inc. and Jeffrey Nadolny's Motion for Partial Summary Judgment (Doc. 191). Oral argument on Defendants' Motion was heard on June 4, 2021. For the following reasons, the Motion is **GRANTED IN PART** and **DENIED IN PART.**

## BACKGROUND

Plaintiff Express Lien d/b/a Levelset ("Express Lien") is a New Orleans-based construction payment and document management software platform for parties in construction. Plaintiff distributes content and transacts business through an online platform (the "Levelset Platform") found at the URLs "zlien.com" and "levelset.com." Through the Levelset Platform, "construction participants can monitor, exchange, file or record, and request hard-copy and electronic information and documents related to construction payment and construction projects generally, as well as exert[] and maintain[] control over their security rights."[1] Visitors to the website can also purchase "self-help" informational resources on construction-related topics. Plaintiff contends that

---

[1] Doc. 1 at 3.

much of its downloadable content is registered for copyright protection and that the website's users are required to create an online account and agree to the website's Terms of Use (the "Terms") before accessing its content.

Defendant Handle, Inc. ("Handle") is a similar and competing construction technology company headquartered in California. Plaintiff alleges that Handle's employee, Defendant Jeffrey Nadolny ("Nadolny"), created multiple fictitious accounts with the Levelset Platform to improperly gain access to Express Lien's content. Plaintiff alleges that Nadolny then copied and reverse engineered its Levelset Platform for Handle's benefit and in derogation of the Terms of Use. On May 7, 2019, Plaintiff filed this suit against Handle and Nadolny (collectively "Defendants") for breach of contract, fraud, violation of the Louisiana Unfair Trade Practices and Consumer Protection Law ("LUTPA"),[2] copyright infringement, and trade dress infringement. On May 3, 2021, Plaintiff voluntarily dismissed its claim for trade dress infringement. Trial on Plaintiff's remaining claims is set for June 21, 2021.

Now before the Court is Defendants' Motion for Summary Judgment wherein Defendants ask this Court to dismiss various aspects of Plaintiff's claims for fraud, LUTPA violations, copyright, and damages. Plaintiff opposes the Motion.

## **LEGAL STANDARD**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[3] "As to materiality . . . [o]nly disputes over facts that might affect the outcome of the suit under the governing law will

---

[2] LA. REV. STAT. § 51:1401, *et seq.*
[3] FED. R. CIV. P. 56.

2

properly preclude the entry of summary judgment."[4] Nevertheless, a dispute about a material fact is "genuine" such that summary judgment is inappropriate "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[5]

In determining whether the movant is entitled to summary judgment, the Court views facts in the light most favorable to the non-movant and draws all reasonable inferences in his favor.[6] "If the moving party meets the initial burden of showing that there is no genuine issue of material fact, the burden shifts to the non-moving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial."[7] Summary judgment is appropriate if the non-movant "fails to make a showing sufficient to establish the existence of an element essential to that party's case."[8]

"In response to a properly supported motion for summary judgment, the nonmovant must identify specific evidence in the record and articulate the manner in which that evidence supports that party's claim, and such evidence must be sufficient to sustain a finding in favor of the nonmovant on all issues as to which the nonmovant would bear the burden of proof at trial."[9] The Court does "not . . . in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts."[10] Additionally, "[t]he mere argued existence of a factual dispute will not defeat an otherwise properly supported motion."[11]

---

[4] Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).
[5] *Id.* at 248.
[6] Coleman v. Hous. Indep. Sch. Dist., 113 F.3d 528, 533 (5th Cir. 1997).
[7] Engstrom v. First Nat'l Bank, 47 F.3d 1459, 1462 (5th Cir. 1995).
[8] Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).
[9] Johnson v. Deep E. Tex. Reg. Narcotics Trafficking Task Force, 379 F.3d 293, 301 (5th Cir. 2004) (internal citations omitted).
[10] Badon v. R J R Nabisco, Inc., 224 F.3d 382, 393–94 (5th Cir. 2000) (quoting Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994)).
[11] Boudreaux v. Banctec, Inc., 366 F. Supp. 2d 425, 430 (E.D. La. 2005).

# LAW AND ANALYSIS

In Defendants' Motion for Partial Summary Judgment, Defendants Handle and Nadolny ask this Court to dismiss five of Plaintiff's alleged claims against them. Specifically, Defendants ask that this Court dismiss: (1) claims for fraud and LUTPA violations arising from Nadolny's creation of fraudulent accounts with the Levelset Platform; (2) claims for fraud and violations of LUTPA and the Lanham Act arising from Handle's misrepresentations to its investors; (3) claims for liquidated or stipulated damages pursuant to the Terms of Use; (4) claims for "actual damages" arising from Defendants' alleged "unfair benefit" and Plaintiff's market value decline, and (5) claims against Defendants for copyright infringement. The Court will address each argument in turn.

## I. Claims for Fraud and Violations of LUTPA Arising from Nadolny's Express Lien Accounts

In Plaintiff's First Amended Complaint, Plaintiff alleges that Defendant Nadolny, through and for the benefit of Handle, committed fraud and violated LUTPA when he created multiple false accounts with deceptive and misleading information to improperly gain access to Plaintiff's products and services. Specifically, Plaintiff alleges that Nadolny created two fraudulent accounts with the Levelset Platform posing as (1) "JBN Supplier" with an address in Arizona and (2) "Abbott Construction" with an address in North Carolina. Under the guise of these companies, Plaintiff contends that Defendants created various "transactions" with Plaintiff for allegedly fake projects in order to access and copy Plaintiff's material. In the instant Motion for Summary Judgment, Defendants ask this Court to dismiss these claims against them as Plaintiff cannot prove that Nadolny's submissions to the Levelset Platform constitute fraud or LUTPA violations.

4

A.  Fraud

Under Louisiana Civil Code Article 1953, "[f]raud is a misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage for one part or to cause a loss or inconvenience to the other." To succeed on a claim for fraud under this Article, the plaintiff must prove: (1) a misrepresentation, suppression, or omission of true information; (2) the intent to obtain an unjust advantage or to cause damage or inconvenience to another; and (3) the error induced by a fraudulent act must relate to a circumstance substantially influencing the victim's consent to (a cause of) the contract.[12] As to the third element, the plaintiff "must at least be able to say that had he known the truth, he would not have acted as he did to his detriment. Whether this element is labeled reliance, inducement, or causation, it is an element of plaintiff's case for fraud."[13]

Defendants contend that summary judgment should be granted as to Plaintiff's fraud claim because Plaintiff cannot prove that it relied upon the alleged fraudulent account information. Plaintiff seems to concede that it does not screen the visitors to its website and therefore could not have relied upon the false user information in granting Defendants access to its platform. The Court thus agrees with Defendants that Plaintiff cannot prove that, "if Nadolny had consistently used truthful information at all times, Plaintiff would have blocked Defendants' access to the areas of Plaintiff's website that contain . . . protected and/or proprietary products."[14] To the extent that Plaintiff's fraud claim is based solely on Nadolny's creation of the fraudulent

---

[12] Koerner v. CMR Constr. & Roofing, L.L.C., 910 F.3d 221, 228 (5th Cir. 2018) (quoting Shelton v. Standard/700 Associates, 798 So.2d 60, 64 (La. 2001) (internal quotations omitted)).
[13] Sun Drilling Prod. Corp. v. Rayborn, 2000-1884 (La. App. 4 Cir. 10/3/01), 798 So. 2d 1141, 1153, *writ denied*, 2001-2939 (La. 2002), 807 So. 2d 840 (citing In re Ford Motor Company Vehicle Paint Litigation, 1997 WL 539665 (E.D. La.8/27/97)).
[14] Doc. 41 at 19.

accounts and Plaintiff's reliance on the information therein, Defendants' Motion is granted.

Plaintiff, however, has alternatively asserted that Defendants also committed fraud when they accepted the Terms of Use as part of a plan to copy Express Lien's content. Plaintiff explains that Defendants represented, through their acceptance of the Terms of Use, that they would not use Plaintiff's material for certain purposes and that Plaintiff relied upon these representations in allowing Defendants access to certain proprietary information.[15]

Although "[f]raud . . . cannot be predicated on unfulfilled promises or statements as to future events,"[16] "[f]raud may be predicated on promises made with the intention not to perform at the time the promise is made."[17] "It is this *present* intention [not to perform] that avoids turning every breach of contract into a fraud claim."[18] The Court finds that Plaintiff has presented sufficient evidence that Nadolny registered fraudulent accounts to gain access to Express Lien's website, and this evidence in turn is sufficient to create a genuine issue of material fact as to whether Nadolny intended to violate the Terms of Use at the time he agreed to them. Defendants' Motion as to Plaintiff's fraud claim on these grounds is therefore denied.

---

[15] At oral argument, counsel for Defendants argued that Plaintiff had not sufficiently alleged a claim for fraud premised upon Nadolny's acceptance of the Terms of Use. The Court, however, finds that Plaintiff's First Amended Complaint sufficiently alleges law and facts to support this additional fraud theory. *See* Doc. 41 at 19 ("Plaintiff justifiably relied on the information and assurances presented to it by Defendants . . . Specifically, before accessing certain content on Plaintiff's website, on multiple occasions Nadolny agreed to abide by the Terms governing access certain [sic] of the website's content, products, and materials."
[16] *Sun Drilling Prod. Corp*, 798 So. 2d at 1152.
[17] *Id*. (citing Dutton and Vaughan, Inc. v. Spurney, 600 So.2d 693, 698 (La. App. 4 Cir. 3/26/92)).
[18] Keenan v. Donaldson, Lufkin & Jenrette, Inc., 575 F.3d 483, 490 (5th Cir. 2009) (citing Automatic Coin Enters. v. Vend–Tronics, Inc., 433 So.2d 766, 767–68 (La. App. 5 Cir. 1983) (emphasis added)).

## B. LUTPA

LUTPA provides a private right of action to any person injured by "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."[19] To sustain a cause of action under LUTPA, the claimant must satisfy a two-prong test: "(1) the person must suffer an ascertainable loss; and (2) the loss must result from another's use of unfair methods of competition and unfair or deceptive acts or practices."[20] "A practice is 'unfair' when it offends established public policy and when the practice is unethical, oppressive, unscrupulous or substantially injurious."[21] Thus, "'the 'range of prohibited practices under LUTPA is extremely narrow, and there is 'a great deal of daylight between a breach of contract claim and the egregious behavior the statute proscribes.'"[22]

Defendants argue that "[j]ust as Plaintiff cannot prove justified reliance, it also cannot prove that it suffered any loss 'as a result of the use or employment by' Nadolny's submissions of information to its website."[23] Actionable conduct under LUTPA, however, is not necessarily coextensive with fraudulent conduct.[24] "Louisiana courts have described a trade practice as deceptive [under LUTPA] when it amounts to 'fraud, deceit or

---

[19] LA. REV. STAT. §§ 51:1409A, 51:1405A.
[20] *Id*. at 450 (citing Cheramie Serv., Inc. v. Shell Deepwater Prod., Inc. 35 So.3d 1053, 1057 (La. 2010).
[21] NOLA 180 v. Treasure Chest Casino, LLC, 11-853 91 So. 3d 446, 449 (La. App. 5 Cir. 3/27/12), *writ denied*, 90 So. 3d 1066 (La. 2010) (citing Hernaez v. Mothe Life Ins. Co., 28 So.3d 454, 458 (La. App. 5 Cir. 2009); Risk Management Services, LLC v. Moss, 40 So.3d 176, 185 (La. App. 5 Cir. 2010)).
[22] Cargill, Inc. v. Degesch Am., Inc., 875 F. Supp. 2d 667, 676 (E.D. La. 2012) (quoting Cheramie, 35 So.3d at 1060; Turner v. Purina Mills, Inc., 989 F.2d 1419, 1422 (5th Cir. 1993).
[23] Doc. 191-1 at 8.
[24] *See* House of Raeford Farms of Louisiana LLC v. Poole, No. CV 19-271, 2021 WL 1081837, at *8 (W.D. La. Mar. 18, 2021) (finding that Plaintiff failed to state a claim for fraud but that Plaintiff sufficiently stated a claim under LUTPA) ("[Defendants] made no effort to acknowledge the jurisprudence that holds that unfair practices are sufficient under LUTPA and that fraud is not a necessary element of a LUTPA claim.").

7

misrepresentation.' Thus, it is clear that LUTPA claims are not limited solely to allegations of fraud, but may be independently premised on a range of non-fraudulent conduct."[25] The reasons for dismissing Plaintiff's fraud claim as to the fraudulent accounts do not necessarily justify dismissing Plaintiff's related LUTPA claim.

Moreover, the Court does not read Plaintiff's First Amended Complaint as alleging that Nadolny's creation of the fake accounts alone constitutes a LUTPA violation. Rather, Plaintiff alleges that Defendants violated LUTPA by copying Express Lien's content and misrepresenting its source to users and investors.[26] Although Plaintiff looks to the fraudulent accounts as evidence of intent and the existence of an overall scheme, the accounts themselves are not the core of Plaintiff's LUTPA claim. For these reasons, Defendants' Motion is denied.

## II. Claims Arising from Handle's Alleged Misrepresentations to Its Investors

As part of Plaintiff's claim against Defendants for fraud and LUTPA violations, Plaintiff alleges that Defendants made material misrepresentations to their investors and consumers as to the original authorship of Handle's content and the capabilities of Handle's software. Defendants ask the Court to dismiss Plaintiff's fraud and LUTPA claims to the extent they are premised upon these alleged investor misrepresentations.[27]

---

[25] Mabile v. BP, p.l.c., No. CV 11-1783, 2016 WL 5231839, at *25 (E.D. La. Sept. 22, 2016) (citing Pinero v. Jackson Hewitt Tax Serv. Inc., 594 F. Supp. 2d 710, 720–21 (E.D. La. 2009); Jefferson v. Chevron U.S.A. Inc., 713 So.2d 785, 792 (La. Ct. App. 1998)).
[26] See Doc. 41 at 20–21 (Plaintiff's listing of Defendants' alleged actions that violate LUTPA).
[27] Defendants also ask that the Court dismiss Plaintiff's Lanham Act claim on these same grounds. In a footnote, however, Defendants dispute that Plaintiff has even stated a claim for unfair trade practices under the Lanham Act. Plaintiff responds, also in a footnote, that it "has asserted a claim for unfair trade practices under LUTPA and the Lanham Act on a false advertising theory . . ." See Doc. 14 n.21. To address whether Plaintiff's investor-related Lanham Act claims survive summary judgment, the Court would first need to address whether Plaintiff has stated a claim under the Lanham Act. Provided the lack of briefing, the

Defendants first argue that Plaintiff's investor-related fraud claim should be dismissed as Plaintiff cannot prove that it justifiably relied upon Handle's statements to its investors. In response, Plaintiff clarifies that it "does not contend that the misrepresentations to investors, standing alone, represented actionable fraud against Express Lien. But it was part of the fraud inflicted on Express Lien."[28] As it is undisputed that Plaintiff did not rely upon Handle's statements to its investors, the Court grants summary judgment on Plaintiff's fraud claim to the extent it is premised upon these representations.

Second, Defendants ask this Court to dismiss Plaintiff's investor-related LUTPA claim, contending that Handle's misrepresentations to investors do not qualify as "trade" or "commerce" and thus do not fall within LUTPA's scope. Again, LUTPA creates a private right of action to any person who suffers an "ascertainable loss" as the result of "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."[29] Although LUTPA prohibits suits brought in a "representative capacity,"[30] "LUTPA is not limited to misconduct committed 'on behalf of the [plaintiff] or in the course of [the plaintiff's] commercial activities.'" Rather, LUTPA "covers unfair 'acts or practices in the conduct of any trade or commerce." Further, "LUTPA defines trade or commerce broadly" as:

> . . . the advertising, offering for sale, sale, or distribution of any services and any property, corporeal or incorporeal, immovable or movable, and any other article, commodity, or thing of value wherever situated, and includes any trade or commerce directly or indirectly affecting the people of the state.

---

Court specifically declines to address the validity of Plaintiff's purported Lanham Act claims at this time.
[28] Doc. 237-7 at 15.
[29] LA. REV. STAT. §§ 51:1405(A); 51:1409(A); IberiaBank v. Broussard, 907 F.3d 826, 839 (5th Cir. 2018).
[30] LA. REV. STAT. 6 51:1402(10); *IberiaBank*, 907 F.3d at 840.

9

Here, the Court finds that Handle's misrepresentations to its investors fall within LUTPA's scope as they are effectively an "advertising" or "offering for sale" of Handle's equities. Further, at least one of Plaintiff's experts opines as to the direct effect that Handle's increased investments had upon Express Lien's revenue.[31] Plaintiff has thus presented a genuine issue of material fact as to whether it suffered an "ascertainable loss" because of Handle's misrepresentations to its investors.

## III. Claims for Liquidated or Stipulated Damages Pursuant to Plaintiff's Terms of Use

Defendants next ask this Court to declare unenforceable the stipulated damages clauses in the Terms of Use. Defendants argue that the stipulated damages provisions do not approximate the actual damages suffered and are thus unenforceable penalties under Louisiana law.[32] Specifically, Defendants take issue with the following stipulated damages: (1) $15,000 per "Free Form" violation; $1,000,000 per instance of reverse engineering; and $30,000 for non-willful copying and $150,000 for willful copying of Express Lien's content.

Under Louisiana Civil Code Article 2005, "[p]arties may stipulate the damages to be recovered in case of nonperformance, defective performance, or delay in performance of an obligation." Where parties have agreed to stipulated damages, the court may not modify said damages unless "they are so manifestly unreasonable as to be contrary to public policy."[33] "An obligee who avails himself of a stipulated damages clause need not prove the actual

---

[31] Doc. 237-10 at 10 (Report of Vanessa Claiborne).
[32] Defendants also argue that the Terms of Use constitute a contract of adhesion as they were not negotiated and are only posted to Plaintiff's website. Defendants, however, provide no law or evidence in support of this argument. Further, for the reasons already stated in relation to Plaintiff's Motion for Partial Summary Judgment, the Court finds that Nadolny sufficiently accepted Plaintiff's Terms of Use.
[33] LA. CIV. CODE art. 2012.

damage" incurred.[34] Nevertheless, "stipulated damages should reasonably approximate the damages suffered by the obligee and not be penal."[35] Thus, a party may provide evidence of actual damages, or the lack thereof, to demonstrate that the stipulated damages are so unreasonably high as to be contrary to public policy.[36] Stipulated damages clauses are presumed reasonable; thus, the party asserting unenforceability bears the burden of proving that the clause is against public policy.[37]

Here, Defendants ask this Court to find that many of the stipulated damages provisions in the Terms of Use are manifestly unreasonable and contrary to public policy. Specifically, Defendants argue that the provisions are against public policy because they are (1) ambiguous and thus set a "trap for the unsuspecting visitor" and (2) "outside the bounds of any approximation of reasonable damages."[38]

Defendants first argue that the "Free Forms" and "Reverse Engineering" stipulated damages provisions are so ambiguous as to constitute a *per se* violation of public policy. With regards to the unauthorized use of "Free Forms," the stipulated damages provision provides that:

> By using the Free Forms, you hereby agree to the following: 1) That the Free Forms are provided solely for personal use as a resource and/or a template; 2) As a resource and/or template the Free Forms should not be mailed, filed, recorded, or otherwise used in any other manner related to a construction or other project; 3) The Free Forms may not be used in any commercial manner, including reselling, or otherwise distributing . . .

Defendants argue that this provision is unfair and deceptive because the

---

[34] LA. CIV. CODE art. 2009.
[35] Mobley v. Mobley, 852 So. 2d 1136, 1139 (La. App. 2 Cir. 2003).
[36] *See id.*
[37] Util. Constructors, Inc. v. Perez, No. CV 15-4675, 2016 WL 5801363, at *5–6 (E.D. La. Oct. 5, 2016) (citing James Const. Grp., L.L.C. v. State ex rel. Dep't of Transp. & Dev., 977 So. 2d 989, 998 (La. App. 1 Cir. 2007)).
[38] Doc. 191 at 15, 16.

second restriction—prohibiting mailing, filing, etc.—contradicts elsewhere on the website that encourages usage of the forms "as the user sees fit." Defendants disregard, however, that it is not the second restriction, but the third—prohibiting commercial use of the forms—that is implicated in this case. Thus, the Court need not decide whether allegedly "innocent" conduct warrants $15,000 in stipulated damages as such conduct is not at issue here.[39]

Defendants further argue that the stipulated damages provision for reverse engineering does not provide a fair and clear warning to users that it also proscribes reverse engineering the website's "navigational flow" or "framework." The Terms of Use, however, clearly state that:

> You hereby explicitly agree you will not reverse engineer, decompile, disassemble or otherwise attempt to derive the source code, techniques, processes, algorithms, know how or other information from the Company's services, technology, products, code, etc. (collectively, "Reverse Engineering") or permit or induce the foregoing. . . . Any information supplied to or obtained by you under this section is confidential information of the Company . . . and will not be disclosed to any third party or used to create any software which is substantially similar to the expression of the Company's technology.[40]

The Court finds that the above language clearly prohibits reverse engineering the Levelset Platform's navigational flow to create a competing website. Defendants' Motion is accordingly denied on these grounds.[41]

---

[39] Philippi v. Viguerie, 606 So. 2d 577, 579 (La. App. 5 Cir. 1992), *writ denied*, 609 So. 2d 226 (La. 1992) ("However, art. 2012 grants the court power to modify stipulated damages if those damages are so manifestly unreasonable as to be contrary to public policy. As correctly stated by appellant, the court's sole inquiry in this matter is whether the stipulated damages of $1,000.00 per violation of the non-competitive agreement is so manifestly unreasonable as to be contrary to public policy.").

[40] Doc. 191-10 at 9.

[41] Defendants also provide case law explaining that reverse engineering alone is a permissible practice amongst competitors. Defendants, however, have not provided the Court with any case law suggesting that this otherwise-permissible conduct cannot be proscribed by contract.

Second, Defendants contend that the stipulated damages for reverse engineering, copying, or improperly using the Free Forms section of the website do not approximate actual damages, are penal in nature, and are therefore contrary to public policy. The Court finds, however, that there is a genuine issue of fact as to the actual damages Plaintiff has or could be expected to sustain as result of these violations. Indeed, Plaintiff's expert, David Blackburn, has opined that the stipulated damages "are reasonable and consistent with the types of harm that would be expected to be suffered by Express Lien."[42] This Court therefore defers to trial its ruling on the validity of the at-issue stipulated damages.

The Court does agree with Defendants, however, that the enhanced damages for willfully copying Express Lien's content as opposed to non-willfully copying content amount to an unenforceable penalty. Under the section of the Terms of Use entitled "Intellectual Property Information," the Terms state, in relevant part, that:

> By viewing the zlien website, the LienPilot web application, or any other location of the Company's information, data, or resources, you specifically agree that if you violate this paragraph of these Terms of Use, by making data extracted from the databases, websites, or any other location of the information or resources, available to third parties, or by including the extracted data in a new database, website or compilation, you agree to pay zlien, Inc. stipulated and liquidated damages in the amount of $30,000.00 for each individual non-willful violation, and $150,000 for each individual willful violation, as establishing actual damages from the violation will be difficult or impossible to do accurately.

---

[42] *See* Doc. 237-8 at 15 (Blackburn Report) ("[T]he harm from these types of damages can be widespread and often includes, among other things, devaluation of the intellectual property itself, devaluation of their business, lost value of customer relationships, damage to reputation, business disruption, increases in capital costs, and increases in operational costs.").

Clearly, the discrepancy in stipulated damages for willful and non-willful violations was not intended to approximate actual damages. Indeed, the Court cannot discern how the intent of the user alters the actual damage to Plaintiff. Plaintiff contends that "by drawing a distinction between willful and non-willful conduct, the liquidated damages criteria set forth in the Terms of Use accounts for other non-punitive purposes such as deterrence."[43] Plaintiff, however, does not provide any legal support for this distinction, and the Court cannot find any. Accordingly, the Court finds that $150,000 in damages for willfully copying Plaintiff's material is penal in nature and thus contrary to public policy under Louisiana law. As to the $30,000 in stipulated damages for non-willful conduct, the Court defers its ruling on the reasonableness of this provision to trial.

## IV. Claims for Actual Damages, Defendants' Unfair Benefit, and the Alleged Diminishment in Plaintiff's Hypothetical Market Value

Finally, Defendants argue that the only evidence of damages presented by Plaintiff is that of Defendants' unfair benefit and Plaintiff's diminished market value. Moreover, Defendants assert that any alleged unfair benefit and diminished market value do not qualify as "actual damages" and are therefore unrecoverable under any of Plaintiff's alleged causes of action. In response, Plaintiff argues that such damages are consistent with the "flexible approach to the computation of damages in intellectual property cases" taken by the Fifth Circuit.[44]

After considering the parties' submissions, the Court does not find these issues sufficiently briefed so as to allow the Court to make the relevant rulings at this time. As trial is set to begin in this matter shortly, the Court resolves to defers its ruling on these issues to trial.

---

[43] Doc. 237-7 at 16.
[44] *Id.*

## V. Claims for Copyright Infringement

Finally, Defendants assert that Plaintiff cannot bring claims for copyright infringement for the duplication of unregistered material. In its Opposition, Plaintiff clarifies that its copyright claim is limited only to that material which is federally registered. Thus, to the extent that Plaintiff's original and subsequent complaints can be read as bringing a copyright claim for unregistered material, Defendants' Motion is granted.

## CONCLUSION

For the foregoing reasons, Defendants' Motion for Partial Summary Judgment (Doc. 191) is **DENIED IN PART** and **GRANTED IN PART** as explained herein.

Signed in New Orleans, Louisiana this 18th day of June, 2021.

_____
**JANE TRICHE MILAZZO**
**UNITED STATES DISTRICT JUDGE**